UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L&L WINE AND LIQUOR CORP.,

    Plaintiff,

-vs-

Case No. 05-71487
Hon: AVERN COHN

ROBERT MONDAVI WINERY,
FRANCISCAN VINEYARDS, INC. And
CANADAIGUA WINE,

    Defendants.
_____/

### DECISION ON PLAINTIFF'S MOTION FOR A INJUNCTION[1]

I.

A.

Justice Stevens was quoted this morning saying a judge is frequently required to make decisions which are distasteful to the judge but required by the law; I think that the Court is in this position today.

This is a commercial dispute under the Michigan Liquor Control Act of 1998, Act 58 of the Public Acts of 1998, particularly section 305, M.C.L.A. §436.1305, et seq., entitled Structure for Business Relationship Between Wine Wholesaler and Supplier (the Act).

Plaintiff is a licensed wine wholesaler under the Act. Defendant is a wine supplier and, more particularly, an outstate seller of wine under the Act. The

---

[1] This Decision is a revision and expansion of the Court's ruling from the bench on August 25, 2005.

relationship between the parties is governed by the Act and reflected in written agreements.

In 1984, the parties entered into a Distributor Agreement dated June 28, 1984 (the 1984 Agreement). Under the section entitled Area of Principal Responsibility, it states:

> Distributor's primary responsibility under this agreement shall be to devote its best efforts to sell and distribute Mondavi wines to all retail licensees in the area of principal responsibility described in Exhibit A. The parties understand that this agreement does not place a territorial or customer restriction upon distributor sales and Mondavi wines except when state or local law so requires and that the designation of the principal area of responsibility is solely for the purpose of judging Distributor's performance under this Agreement, which performance is the essence of this Agreement.

Exhibit A lists the following counties as L&L's Areas of Principle Responsibility:

> Oakland
> Wayne
> Macomb
> Livingston
> Washtenaw

Following Michigan's enactment of the Act in 1984, defendant sent plaintiff the following letter dated August 16, 1984, stating in relevant part:

> It appears that under the recently enacted Michigan Franchise Law, it is required under law sales territories need to be designated. This is to advise you that the Principle Area of Responsibility outlined in our Distributor Agreement will constitute such a designation. To avoid any confusion, your designated sales Area of Principle Responsibility is listed below:
> Counties:      Macomb )
>                Oakland ) Detroit Tri-County Area
>                Wayne )
> Absent an understanding to the contrary, this is also to confirm that pursuant to 6(a)(1) of the Distributor

>Agreement, you are authorized to sell Robert Mondavi wines only to licensed retail accounts in these designated areas and are not to act or authorized to act as a "master distributor" or to sell our wines to other distributors in Michigan.

In 1998, the parties entered into a second Distributor Agreement, dated November 27, 1998 (the 1988 Agreement). Under the section entitled Area of Principal Responsibility, it states:

>Distributor's primary responsibility under this agreement shall be to devote its best efforts to sell and distribute Mondavi wines to all retail licensees in the area of principal responsibility described in Exhibit A. The parties understand that this agreement does not place a territorial or customer restriction upon distributor sales and Mondavi wines except when state or local law so requires and that the designation of the principal area of responsibility is solely for the purpose of judging Distributor's performance under this Agreement, which performance is the essence of this Agreement.

Section 6 of the 1988 Agreement states:

>Performance Standards.
>
>(a)   Distributor agrees: (1) to use its best efforts to sell Mondavi wines to licensed retail accounts only in Distributor's Area of Principal Responsibility in an aggressive, effective and diligent manner, to develop maximum volume of sales of Mondavi wines ...

Section 8 deals with termination and states:

>Mondavi may terminate this Agreement in accordance with notice given as provided by law to Distributor if:
>
>(1)   Distributor fails to perform any of its material obligations under this Agreement including, but not limited to, Distributor's obligations and undertakings sated in section 6 if such failure is not rectified within seventy-five (75) days after Distributor submits a plan of corrective action. Such plan shall be submitted to Mondavi within

>twenty-five (25) days after Mondavi gives
>Distributor written notice of its failure to comply.

As referenced in section 8, section 6(a)(1) states in part that Distributor agrees "[t]o use its best efforts **to sell Mondavi wines to licensed retail accounts only in Distributor's Area of Principal Responsibility. . .**to have its sales personnel personally contact all retailers in the Area of Principal Responsibility. . . ."  (Emphasis added.)

Exhibit A of the Agreement denotes the Area of Principal Responsibility and states in relevant part:

>Robert Mondavi Winery (Seller) and Wine World International (Buyer), Areas of Principal Responsibility:
>
>Counties: Macomb, Oakland, Wayne, Detroit, tri-county area.
>
>This Distributor Agreement is subject to and to be construed according to the Michigan Wine Franchise Act, Act 159 of the Public Acts of 1984, and any conflict, contradiction or difference as well as the rights and obligations of the respective parties and that Michigan statute shall be resolved in favor of the Michigan statute, as amended and interpreted.

On May 17, 2003, the parties entered an Addendum to Existing Distributor Territorial Appointment which states:

>. . .pursuant to the Michigan Wine Franchise Act, hereby amends the previously existing appointment of L & L Wine World as a Distributor of its brands of wine by adding Monroe County, Michigan to L & L Wine's existing territory.

While Plaintiff argues that a course of practice has modified the statutory provisions of the Act, the relationship between the parties clearly is set forth in the

written agreements, particularly the 1988 Agreement and Addendum, entered by them in accordance with the Act.  These agreements, not a course of practice, governs their relationship.

On March 22, 2005 defendant wrote plaintiff in part as follows:

> Reference is made to the agreement between Robert Mondavi Winery and Wine World and, more particularly, Section 6(a)(1), in which L&L undertook to use its best efforts to sell Mondavi wines to licensed retail accounts only in Distributor's Area of Principal Responsibility.
>
> Exhibit A to the agreement defines the Area of Principal Responsibility as the counties of Macomb, Oakland and Wayne.  By Addendum to Existing Territorial Appointment, Monroe County was added on 7 May 2003.
>
> RMW takes this opportunity to also remind L&L of Section 436.1305(12)(b), which provides that a supplier may terminate the agreement if wholesaler fails to confine its sales of a brand to the assigned sales territory.
>
> RMW has received the attached correspondence indicating that L&L intends to sell RMW's products to customers outside L&L's assigned sales territory, in violation of the Act and in breach of the Agreement.
>
> This letter puts L&L on notice that, if such sales are made hereafter, RMW will have to seriously consider following the provisions of the Act, which allow RMW to terminate the agreement on 15 days' notice to L&L.

The attached correspondence referenced in the above letter as Exhibit A is an e-mail message from the corporate wine buyer Meijer, Inc., a major statewide retailer, which states:

> Effective tomorrow morning, Tuesday, March 17, 2005, Meijer has elected to have L&L Wine World service all of our stores in Michigan for the entire Robert Mondavi portfolio of wines.  Under Michigan law, L&L is able to service all Meijer stores for this brand.  I will provide written documentation of this upon request if desired.

5

> ...
> Any distributor attempting to deliver Robert Mondavi products to Meijer in the state of Michigan beginning 3-17 other than L&L Wine World will have their delivery refused at the back door.

Thus, defendant notified plaintiff that its arrangement with Meijer was in violation of the parties' agreements as to territory.

Plaintiff responded in a five-page letter dated March 23, 2005, the important paragraph of which reads:

> For years under the Agreement, L&L Wine has been an outstate (i.e., outside your four Metropolitan Detroit counties) distributor of Mondavi wines. Consistent with outstate distribution rights, L&L Wine has maintained a pattern and practice with Mondavi's knowledge, consent and insistence of purchasing products for distribution statewide, either directly by L&L or indirectly through its subdistributors. Mondavi has never previously advised that L&L Wine's territory does not include outstate distribution. To the contrary, Mondavi in or about 1996 specifically and emphatically reconfirmed the agreement and expectation that L&L Wine was an outstate distributor of Mondavi wines, when Mondavi required L&L Wine to hire an employee with the responsibility for outstate distribution of Mondavi Wines. L&L Wine hired that employee, who retains that position to this day.

Defendant replied by letter dated April 7, 2005, stating in part as follows:

> Your attention is directed to the letter of March 22, 2005, in which L&L Wine was notified of its failure to comply with both its contractual undertakings with Robert Mondavi Winery and the laws of the State of Michigan by selling Robert Mondavi wines outside of the counties of Macomb, Oakland, Wayne and Monroe.
>
> The March 22 notice also advised you that the violation of selling outside of your territory was cause for termination, pursuant to MCL 436.1305(12)(b), should such continue, even though Robert Mondavi Winery would have been authorized to terminate its relationship with y9ou at the time of the letter when it first learned of the violation.
>
> Robert Mondavi Winery has now learned that L&L has nevertheless continued to sell Robert Mondavi wines outside

the Territory.

> Robert Mondavi hereby notifies L&L that its appointment to distribute Robert Mondavi wines in the state of Michigan is hereby terminated, effective April 24, 2005.

Defendant's letters of March 22, 2005 and April 7, 2005 were obviously prompted by plaintiff beginning to sell to Meijer's stores located outside of its designated territory, in violation of the Act and the 1988 Agreement.

B.

On April 13, 2005, plaintiff filed a complaint seeking, *inter alia*, declaratory and injunctive relief. On April 15, 2005, defendant removed the case to federal court on the grounds of diversity jurisdiction. On April 19, 2005, the Court held a hearing at which the parties acquiesced to plaintiff limiting its retail sales to a six-county area, which will be described, and continuing its sales to Meijer with an agreement to account should injunctive relief be granted.

At a status conference on June 15, 2005, the Court stated that it was combining the hearing on a preliminary injunction with a trial on the permanent injunction under Fed. R. Civ. P. 65(a)(2). The trial record consisted of the proffering of exhibits and affidavits in the record. A hearing was held on June 21, 2005. Thereafter, the parties filed extensive briefs and proposed findings of fact. A hearing on the parties' post-trial filings was held on August 25 2005, at which the Court denied plaintiff's request for injunctive relief.

The Court, after full consideration of the record, concludes that plaintiff is not entitled to an injunction, and that defendant was justified in terminating plaintiff as a wholesaler. The reasons follow.

II.

A.

Business relationships in the wine industry are highly structured. A three-tier distribution system is required under the statute, and as reflected on the website of the Michigan Liquor Control Commission (MLCC),[2] the three tiers are the retailer, the wholesaler, and the supplier. As in this case, a supplier may be an outstate seller of wine (OSSW). A wholesaler and OSSW are each required to obtain a non-retail license. An OSSW sells to licensed wholesalers, who resells to licensed retailers.

An OSSW may not sell or ship wine directly to a retail licensee. As explained on the MLCC's website:

> Michigan is a highly regulated three-tier distribution state. The Commission licenses and regulates alcoholic beverage suppliers, wholesalers, and retailers. All alcoholic beverages sold to Michigan consumers must go through each of the licensed distribution tiers. Each of the distribution tiers operates independently of the other. An OSSW license is required to ship wine into Michigan and is authorized to ship/sell wine to licensed Michigan wholesalers only. The Michigan wholesaler is then authorized to ship/sell to the licensed Michigan retailer. The licensed Michigan retailer is the only entity authorized to sell and deliver alcoholic beverages to Michigan consumers. Under no circumstances may an OSSW or any other out-of-state company ship alcoholic beverages directly to Michigan consumers.

An OSSW must enter into territorial agreements with the licensed wholesalers. As further described on the MLCC's website:

> Section 307 of the Michigan Liquor Control Code of 1998 requires a wine manufacturer or an OSSW to grant a sales

---

[2]See http://www.michigan.gov/cis/0,1607,7-154-10570---,00.html

>territory to each of its wholesalers within which the wholesaler shall be the distributor of the specific brand or brands of the manufacturer or OSSW.  The sales territory is not determined by the Commission but is agreed upon by the wholesaler and the manufacturer or OSSW.  More than one wholesaler may be granted the right to sell la specified brand or brands of wine in a given sales territory.  The territorial agreement should be in writing and the wholesaler must be provided with a copy of the agreement.  Copies of the agreement need not be filed with the Commission.

Wholesalers are prohibited from selling to any retailer located outside of their sales territory.  As described on the website:

>Territorial Agreements.  Outstate Sellers of Wine must provide each of their wholesalers with a written territorial agreement specifying the brand or brands of wine in which the wholesaler shall have distribution rights.  Wholesalers are prohibited from selling alcoholic beverages to any retail licensee whose establishment is located outside of their assigned territories.  The assigned territory for wine does not have to be exclusive.  Suppliers may overlap sales territories between wholesalers of similar wines.

Additionally, the Act provides for a master distributor, an entity not described on the MLCC website, but defined in the Act as follows:

>"Master distributor" means a wholesaler who acts in the same or similar capacity as a wine maker or an outstate seller of wine for a brand or brands of wine to other wholesalers on a regular basis in the normal course of business.

MCLA §436.1305(1)(e).

Therefore, the limitations imposed on a "master distributor" are the same limitations imposed on a "supplier."  These statutory limitations, which are reflected on the website and the Act, are as follows:

First, as to the Act, "'Sales territory' means an area of sales responsibility for the

brand or brands of wine sold by a supplier designated by an agreement." M.C.L.A. §436.1306(h). A "supplier" means a wine maker or an outstate seller of wine, or a master distributor. M.C.L.A. §436.1305(1)(j). Under subsection (3),

> A supplier shall not do any of the following:
>
> . . .
>
> (j) Fail to provide each wholesaler of the supplier's brand or brands with a written agreement which contains in total the supplier's agreement with each wholesaler and designates a specific sales territory.

Additional statutory provisions are as follows: Subsection (4) states:

> A wholesaler shall not sell or deliver wine to a retail licensee located outside of the sales territory designated by the supplier.

Subsection (9) states:

> A supplier or wholesaler who terminates, cancels or nonrenews. . .shall have the burden of showing that it has acted in good faith, complied with the applicable notice requirements, and that there was good cause for termination.

Subsection (12) states:

> Notwithstanding [other sections] – a supplier may terminate. . .if any of the following events occur:
>
> (b) The wholesaler failed to confine its sales of a brand. . .to the assigned sales territory.

### B.

While plaintiff characterizes itself as a master distributor, it effectively admits it does not meet the criteria. It does not have written agreements with those wholesalers with which it's doing business limiting the territory to which the wholesaler can sell to

10

licensed retailers.  Rather, at best it can be called a subdistributor, a category not found in the Act.

More specifically, based upon the record here, the Court finds that:

1. Plaintiff's sales to licensed retailers in Livingston and Washtenaw counties, while outside of its assigned territory, was not implicated in defendant's notice or reasons for termination.

2. Defendant has terminated plaintiff under section 12 of the Act because plaintiff is selling directly to state-wide retailers, particularly Meijer stores, some of whose licensed retail stores are located outside of plaintiff's assigned territory.

Parenthetically, the Court notes that even in a chain operation such as Meijer each retail store must be individually licensed.  Therefore, Meijer's has stores that are located within plaintiff's designated territory and stores located outside plaintiff's designated territory.

3. Section 12 is a stand-alone section and gives a supplier the right to terminate a licensed wholesaler for selling outside of its designed territory.

4. Plaintiff's effort to sell to Meijer's licensed retail stores outside of its assigned territory is of an order and magnitude that is outside of sporadic historical sales to retailers outside its assigned territory and constitutes cause for termination.

5. What plaintiff is asserting is the right to expand its retail sales statewide with Michigan's biggest retailers.  This effort is directly contrary to and in violation of the Act's requirement that a wholesaler is territorially limited in its sales to licensed retailers by the written agreement with its supplier mandated by the Act.

6. Plaintiff is not a master distributor as that term is used in the Act.  A master distributor under the Act is in effect a supplier.  As such, it is required to have a written agreement with each wholesaler with which it does business that defines the territory in which the wholesaler can make sales to licensed retailers.

7. Most, if not all, of the wholesalers to which plaintiff is making sales

11

have written agreements with defendant and are assigned specific territories in which the wholesalers may make sales to licensed retailers.

8. Even if the Court were to accept plaintiff's claim that it is a master distributor under the Act, it would be required to have a written agreement not only with the other wholesalers with which it does business, but also itself which seems to be an aberration in light of the thee tier statutory scheme. Additionally, the fact that in 2003 plaintiff entered into an agreement with defendant to add Monroe county to its assigned territory belies any claim that it is a master distributor.

10. A master distributor may not sell directly to licensed retailers. A master distributor under the Act is considered a supplier. A supplier is prohibited from directly selling to a retailer under the 3 tier distribution system mandated by the Act. Accepting plaintiff's position would turn the Act on its head. As stated in defendant's Amended Post Trial Brief, filed August 24, 2005:

> While belaboring the illogic of plaintiff's argument, if master distributors had an unfettered right of appointment, it would destroy a wine maker or outstate seller of wine's right to appoint its own wholesalers and assign exclusive sales territories. That would also allow master distributors to eliminate any exclusive sales territory awarded to its competitors, regardless of the objections of the wine maker. This would essentially eliminate the wholesaler tier of the three tier system. This sort of concentration of power and the abuses it fosters is exactly what the Act attempts to avoid by permitting the three-tier system. See Mich. Comp. Law § 436.1305(1)(b); see, generally, Borman's Inc. v. Liquor Control Comm., 37 Mich. App. 738 (1972) (three-tier system intended to avoid "tied house" problems associated with vertical integration.

A fair reading of Borman suggests that inevitability of the result as a consequence of what plaintiff attempted to do in this case.

11. Whatever the burdens in this case, defendant has acted in good faith, complied with the applicable notice requirements and has good cause for termination.

Therefore, an injunction will not issue.

### C.

This is not a happy decision.  The Court gave the plaintiff ample opportunity from the beginning of the case to back off.  Indeed, defendant gave plaintiff the opportunity to back off in its initial letter.  Rather than backing off, the plaintiff aggressively pursued a position that is absolutely forbidden by the Act and would destroy the three-tier system.  Whether the three-tier system is wise, is not for the Court to say; it has been mandated by the legislature and must be observed.  Plaintiff's action in brokering a deal with Meijer to distribute direct on a state-wide basis is in violation of the parties' agreements as to territory and a violation of the Act.  As a result, defendant is entitled to terminate plaintiff as a wholesaler for defendant's product.

### **CODA**

On August 25, 2005, the Court denied plaintiff's request for injunctive relief.  Six days later, on August 31, 2005, plaintiff filed a motion for stay.  The Court directed defendant to file a response by September 1, 2005 and held a hearing the same day.  The Court denied the motion for the reasons stated on the record at the hearing.  See Order filed September 1, 2005.  This Coda further clarifies the reasons for the denial of the stay.

First of all, defendant's counsel acknowledged defendant's obligations in the event that the plaintiff prevails on an appeal, evidenced by the following colloquy:

> The Court:   Do you concede, Mr. Moody, that if the Court's reversed and the termination is held to have been improper that you're going to have to account for them the damages occasioned for the period in which they were terminated?

13

> Mr. Moody: If the termination was improper, there would be a damages claim that they have a liquidated damages clause and that they have a remedy at law ...

Second, plaintiff's counsel stated that plaintiff was "negotiating round the clock to sell the company" to a third-party, that defendant is aware of the negotiations and approves of the third-party, and that defendant has apparently agreed to maintain the "status quo" during the negotiations. Plaintiff then stated that without entry of a stay, plaintiff will be terminated as a distributor for defendant's products and will therefore have no rights to transfer to the third party.

The Court indicated in response that the parties have to work out their own salvation. The Court determined that defendant had a right to terminate plaintiff and end their relationship. Sooner or later, that is the inevitable result. Whatever life is left between the parties will have to be determined by the parties. The Court should not act to tip the scales in favor of one party over another as they go about defining their relationship, if any. It would be inappropriate for the Court to grant a stay under the circumstances.

SO ORDERED.

Dated: September 9, 2005

   s/Avern Cohn
            AVERN COHN
UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was sent to counsel of record on this date, September 9, 2005, by electronic and/or ordinary mail.

   s/Julie Owens
   Case Manager, (313) 234-5160